IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MICHAEL LEE WILLIAMS,          §
                               §
          Plaintiff,           §
                               §
v.                             §          CIVIL ACTION NO. H-04-4701
                               §
OFFICER WELDON LOVE, FIRST     §
SHIFT LIEUTENANT MARC          §
RODRIGUEZ, and K.R. WHEAT,     §
                               §
          Defendants.          §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Michael Lee Williams, brings this action against defendants, Officer Weldon Love, First Shift Lieutenant Marc Rodriguez, and Major Kevin R. Wheat, pursuant to 28 U.S.C. § 1983 for violation of rights guaranteed by the United States Constitution.  Pending before the court is Defendants Love and Wheat's Motion for Summary Judgment (Docket Entry No. 31).  For the reasons explained below, defendants' motion will be granted, and this action will be dismissed.

## I.  Standard of Review

Summary judgment is authorized if the movants establish that there is no genuine dispute about any material fact and the law entitles them to judgment.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>), (quoting <u>Celotex</u>, 106 S.Ct. at 2553-2554).  If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits or other admissible evidence that specific facts exist over which there is a genuine issue for trial. <u>Id.</u> (citing <u>Celotex</u>, 106 S.Ct. at 2553-2554).  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products Inc.</u>, 120 S.Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.  District courts "possess the power to enter summary judgments <u>sua sponte</u>, so long as the losing party was on notice that [he] had to come forward with all of [his] evidence." <u>Celotex</u>, 106 S.Ct. at 2554.

## II.  <u>Factual Background</u>

Asserting that he had a medical pass to the infirmary for seizure medication, plaintiff alleges that while he was

incarcerated in the Estelle Unit defendant Love delayed his access
to the infirmary, pushed him against the wall, threw him to the
floor, and handcuffed him before finally escorting him to the
infirmary two hours after he initially sought leave to go to the
infirmary.[1]  Plaintiff alleges that as he approached the infirmary
he saw Major Wheat and tried to talk to Wheat when the first shift
lieutenant pushed him so hard that he hit the floor head first
causing a cut that required stitches.  Plaintiff alleges that he
asked Wheat for help but that Wheat refused to control the
lieutenant who called for leg cuffs instead of medical treatment,
sent plaintiff into the infirmary hogtied on a stretcher, and
failed to remove plaintiff's handcuffs while the doctor stitched
the cut above his left eye.[2]  Plaintiff alleges that after the
surgery on September 5, 2003, he was locked up with a major case,
and that on September 12, 2003, he still had a black eye when the
Jester III Unit nurse removed the stitches.[3]  Plaintiff alleges
that from the Jester III Unit he

> wrote a grievance . . . explain[ing] what happened to
> [him] and why they moved [him] to this unit.  They never
> sent [his] grievance back.  I wrote to Huntsville and
> never got an answer.  I have talk[ed] to Warden Chaney no

_____

[1]Complaint Under 42 U.S.C. § 1983, Docket Entry No. 1,
pp. 3-5.

[2]<u>Id.</u> at p. 4.

[3]<u>Id.</u>

-3-

answer.   Mr. Edison is the grievance administrator he never sent my grievance back.[4]

Plaintiff seeks $1.2 million in damages that he alleges he needs "to live on from brain damages," and urges the court to "take control" of the prison grievance process.[5]

Defendants acknowledge that at all times relevant to this action plaintiff was an inmate confined within the TDCJ Estelle Unit, that defendants Love and Wheat were employed by TDCJ and worked at the Estelle Unit, that TDCJ is an agency of the State of Texas, and that on September 5, 2003, plaintiff was involved in a major use of force (MA-03971-09-03) in which defendant Love was a participant and defendant Wheat was a witness.  "As a result of this use of force, [p]laintiff received a small laceration over his left eye and received five sutures."[6]

### III.  <u>Procedural Background</u>

Plaintiff filed his Complaint Under 42 U.S.C. § 1983 on December 10, 2004 (Docket Entry No. 1), together with his Application to Proceed In Forma Pauperis (Docket Entry No. 2).  By Memorandum and Order entered on May 5, 2005 (Docket Entry No. 4), the court granted plaintiff's Application to Proceed In Forma Pauperis, assessed an initial filing fee of $0.60 and a directive

---

[4]<u>Id.</u>

[5]<u>Id.</u>

[6]Defendants Love and Wheat's Motion for Summary Judgment with Brief in Support (Defendants' Motion), Docket Entry No. 31, p. 3.

-4-

to commence paying the remainder of the $150 filing fee in installments (Docket Entry No. 4). By Order to Answer served on the Attorney General's office on May 5, 2005 (Docket Entry No. 3), the court directed the defendants to answer plaintiff's complaint. On June 20, 2005, the attorney general informed the court that the first lieutenant at the Estelle Unit during the time of the events alleged in plaintiff's complaint was Marc Rodriguez who was then on active military duty in Iraq (Docket Entry No. 6). After Rodriguez returned from military service by Order entered on December 15, 2005 (Docket Entry No. 22), the court directed the United States Marshals Service to serve defendant Marc Rodriguez a copy of plaintiff's complaint at Rodriguez' last known address. The Marshals Service served Marc Rodriguez by certified mail, and on January 27, 2006, notice of service of process on him was returned executed (Docket Entry No. 27). On April 21, 2006, defendants Love and Wheat filed the pending motion for summary judgment (Docket Entry No. 31), and on May 2, 2006, plaintiff filed his response to the pending motion (Docket Entry No. 32). Although Marc Rodriguez has not made an appearance in this action, and the assistant attorney general representing defendants Love and Wheat does not have authority to represent defendant Rodriguez, the assistant attorney general nevertheless asks the court to take the motion for summary judgment under advisement as to the claims asserted against defendant Rodriguez.[7]

---

[7]_Id._ at p. 6 & n.3.

## IV.  Analysis

Defendants Love and Wheat argue that they are entitled to summary judgment because plaintiff failed to exhaust his administrative remedies, because any claims that plaintiff is attempting to assert against them in their official capacities are barred by sovereign immunity, and because any claims that plaintiff is attempting to assert against them in their personal capacities are barred by qualified immunity.

**A.    Prison Grievance System**

In addition to his request for monetary relief, plaintiff asks the court to "take control T.D.C. grievance it is to many people are being abused by staff that is fact."[8]  To the extent that this request seeks prospective injunctive relief, the court concludes that it is barred by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(c), which precludes claims based on a state's failure to adopt or adhere to administrative grievance procedure.

**B.    Exhaustion**

Asserting that plaintiff failed to exhaust his administrative remedies prior to filing suit, defendants argue that plaintiff "cannot maintain this suit as he cannot satisfy the mandates of the Prison Litigation Reform Act (PLRA) 42 U.S.C. § 1997e(a)."[9]  This

---

[8]Complaint Under 42 U.S.C. § 1983, Docket Entry No. 1, p. 4.

[9]Defendants' Motion, Docket Entry No. 31, p. 9.

section of the PLRA provides that "[n]o action shall be brought
with respect to prison conditions under section 1983 of this title,
or any other Federal law, by a prisoner confined in any jail,
prison, or other correctional facility until such administrative
remedies as are available are exhausted."   42 U.S.C. § 1997e(a).
This exhaustion requirement "applies to all prisoners seeking
redress for prison circumstances or occurrences."   Porter v.
Nussle, 122 S.Ct. 983, 986 (2002); Clifford v. Gibbs, 298 F.3d 328,
330 (5th Cir. 2002).   A prisoner is required to exhaust his
administrative remedies even if damages are unavailable through the
grievance process.   Booth v. Churner, 121 S.Ct. 1819, 1825 & n.6
(2001) ("we will not read futility or other exceptions into
statutory exhaustion requirements where Congress has provided
otherwise.").   See also Wright v. Hollingsworth, 260 F.3d 357, 358
(5th Cir. 2001) (rejecting argument that prisoner substantially
complied with TDCJ grievance procedure by filing Step 1 grievance);
Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998), cert.
denied, 119 S.Ct. 1809 (1999) (per curiam) (dismissing with
prejudice prisoner action filed before exhausting administrative
remedies).

        The TDCJ provides a two-step procedure for presenting
administrative grievances.   Step 1 requires the prisoner to submit
an administrative grievance at the institutional level within
fifteen calendar days of the underlying event.   Wendell v. Asher,
162 F.3d 887, 891 (5th Cir. 1998) (citing TDCJ Administrative

Directive No. AD-03.82 (rev. 1), Policy, ¶ IV (Jan. 31, 1997)).
TDCJ's response to a Step 1 grievance is due within forty days
after receipt of the grievance.   The prisoner then has 10 days to
submit an appeal, also known as a Step 2 grievance, to the
grievance investigator with TDCJ's Institutional Division.
Response to the Step 2 grievance is due within forty days after
receipt of the inmate's appeal.   Id.   The primary purpose of the
exhaustion requirement is to provide prison officials with "time
and opportunity to address complaints internally."   Johnson v.
Johnson, 385 F.3d 503 (5th Cir. 2004) (quoting Porter, 122 S.Ct. at
988).

        Defendants submit plaintiff's prison grievance records from
July 2003 through March 2004 as evidence that plaintiff did not
exhaust his administrative remedies for the claims asserted in this
action.[10]   The grievance records contain copies of a Step 1
grievance filed on July 9, 2003, regarding plaintiff's failure to
receive medical treatment for seizures, and a Step 1 grievance
filed on August 18, 2003, regarding the unavailability of cool
drinking water in the day room, but do not contain any evidence of
a grievance regarding either the defendants named or the conduct
alleged in this action.[11]

_____

        [10]Id. at pp. 10-11, and Exhibit D attached thereto.

        [11]See Affidavit of Gwen Kay Stanford, Assistant Administrator
Offender Grievance Texas Department of Criminal Justice and
attachments thereto, Exhibit D attached to Defendants' Motion,
Docket Entry No. 31.

                                   -8-

Plaintiff responds that he

> wrote a grievance Sept. 12 on J-3 [the Jester III Unit]
> it never came back.  Warden Chaney, Warden Wilson and
> Maj. Kicks have knowledge I wrote a grievance about what
> happen[ed].  I wrote Huntsville it never [came] back.  I
> wrote the F.B.I. in Houston they sent it to Texas City.
> The officer in Texas City said he seen the tape.  But he
> never came out to see if it was me.  He said his office
> cannot help me.  He said you can file.  This should be
> one record.  Call J-3 and the F.B.I.  I did exhaust all
> I could I came up empty. . . .
>
> . . . I did all the requirement.  They are trying to use
> a rule which they cannot because I did use all the
> administrative on J-3 and then some. . . . Rules are you
> must file 1 before you file 2.[12]

Moreover, on December 29, 2005, plaintiff filed an advisory with
the court stating that he filed a grievance on September 12, 2003,
that the grievance never came back to him, and that he had talked
to the warden and to Major Hicks about his grievance, both of whom
told him they would look into it.[13]  Plaintiff's advisory also
acknowledged that "[r]ule [i]s you have to get step 1 that has been
signed by the Warden before you file step 2.  You must attach the
completed step 1 before you file step 2."[14]

Both Plaintiff's Answer to the Defendants' Summary Judgment
and his December 29, 2005, Advisory to the Court show that although
he understood that the grievance process was a two-step process, he

---

[12]Plaintiff's Answer to the Defendants' Summary Judgment,
Docket Entry No. 32, pp. 3-4.

[13]See December 29, 2005, Advisory to the Court, Docket Entry
No. 24, p. 1.

[14]<u>Id.</u>

failed to file a Step 2 grievance.  Since the PLRA required plaintiff to exhaust all available remedies to conclusion, the court concludes that his failure to do so precludes him from maintaining a federal lawsuit.  <u>See</u> <u>Wright</u>, 260 F.3d at 358. Accordingly, the court concludes that all the claims asserted in this action are subject to dismissal because plaintiff has acknowledged that he failed to file a Step 2 grievance prior to filing suit and, therefore, failed to exhaust his administrative remedies prior to bringing this action.  Alternatively, for the reasons explained below, the court concludes that defendants Love and Wheat are entitled to summary judgment on plaintiff's claims because, assuming plaintiff's version of the facts to be true, the court concludes that the conduct of these defendants did not violate any of plaintiff's clearly established constitutional rights.

**C.   Section 1983 Claims**

Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere.  <u>Albright v. Oliver</u>, 114 S.Ct. 807, 811 (1994).  To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an individual acting under color of law caused the deprivation of a right secured by federal law.  Defendants are state officials who may be sued in their official and/or their

individual capacities. <u>Hafer v. Melo</u>, 112 S.Ct. 358 (1991); <u>Kentucky v. Graham</u>, 105 S.Ct. 3099 (1985). Plaintiff's complaint does not state whether he is suing the defendants in their official and/or their individual capacities. Because the allegations of <u>pro se</u> complainants must be construed liberally, <u>Haines v. Kerner</u>, 92 S.Ct. 594 (1972), the court construes plaintiff's complaint to have asserted claims against the defendants in both their official and their individual capacities.

### 1. <u>Official Capacity Claims</u>

A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents. <u>Graham</u>, 105 S.Ct. at 3105. Thus, any claims that the plaintiff is attempting to assert against the defendants in their official capacities are actually claims asserted against the state of Texas. The Eleventh Amendment to the United States Constitution bars suits for money damages brought in federal court against states and state officials acting in their official capacities. <u>Id.</u> at 3104-3106 & n.14. In this case plaintiff seeks $1.2 million "to live on from brain damage."[15] Accordingly, the court concludes that any claims that plaintiff is attempting to assert against the defendants in their official capacities for money damages is subject to dismissal because such claims are barred by the Eleventh Amendment.

_____

[15]Complaint Under 42 U.S.C. § 1983, Docket Entry No. 1, p. 4.

-11-

2.    <u>Personal Capacity Claims</u>

Qualified immunity shields "governmental officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 102 S.Ct. 2727, 2738 (1982).  Because qualified immunity protects government officials from suit and not just from liability, <u>Mitchell v. Forsyth</u>, 105 S.Ct. 2806, 2815 (1985), questions concerning entitlement to qualified immunity are to be decided at the earliest possible stage of litigation.  <u>Anderson v. Creighton</u>, 107 S.Ct. 3034, 3042 n.6 (1987).  <u>See</u> <u>also</u> <u>Schultea v. Wood</u>, 47 F.3d 1427, 1432 (5th Cir. 1995) (en banc).  When a governmental defendant pleads the affirmative defense of qualified immunity, the plaintiff must demonstrate that specific constitutional rights were violated, that the rights violated were clearly established at the time defendant acted, and that defendant's actions were objectively unreasonable. <u>Hassan v. Lubbock Independent School Dist.</u>, 55 F.3d 1075, 1079 (5th Cir.), <u>cert.</u> <u>denied</u>, 116 S.Ct. 532 (1995) (citing <u>Siegert v. Gilley</u>, 111 S.Ct. 1789, 1793 (1991), and <u>Anderson</u>, 107 S.Ct. at 3039).

(a)  Officer Weldon Love

Plaintiff alleges that Officer Love denied his request to go to the infirmary to get his seizure medication from Dr. Williams

-12-

but let other people go to their appointments, and that Officer
Love used an excessive amount of force when he pushed plaintiff's
face to the wall and laid plaintiff on the floor to place handcuffs
on him.  Construed liberally, plaintiff's allegations assert claims
against Officer Love for the delay of medical care and for the
excessive use of force in violation of rights guaranteed by the
Eighth Amendment to the United States Constitution.

(i)  Delayed Medical Care

"Deliberate indifference to a prisoner's serious illness or
injury states a cause of action under § 1983." Estelle v. Gamble,
97 S.Ct. 285, 291 (1976).  "Deliberate indifference encompasses
only unnecessary and wanton infliction of pain repugnant to the
conscience of mankind." Norton v. Dimazana, 122 F.3d 286, 291 (5th
Cir. 1997) (citing Estelle, 97 S.Ct. at 219-291).  "'Subjective
recklessness,' as used in the criminal law, is the appropriate test
for deliberate indifference." Id. (citing Farmer v. Brennan, 114
S.Ct. 1970, 1980 (1994)).  Delay in medical care can only
constitute an Eighth Amendment violation if there has been
deliberate indifference that results in substantial harm.  Mendoza
v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).  See Hudson v.
McHugh, 148 F.3d 859, 863-864 (5th Cir. 1998) (jail officers' and
nurse's refusal to do anything about prisoner's repeated requests
for epilepsy medicine despite knowing he did not have his medicine
constituted deliberate indifference to serious medical need).

-13-

Asserting that he had a pass to go to the infirmary to get medicine for seizures, plaintiff alleges that when at 10:00 he initially asked Officer Love for leave to go to the infirmary, Officer Love failed to respond, and that when at noon he again asked Officer Love for leave to go to the infirmary, Officer Love again failed to respond.[16]   Plaintiff alleges that when he turned to walk away Officer Love pushed him up against the wall, then down to the floor to restrain him with handcuffs, following which Officer Love stood him up and began to escort him to the infirmary. Plaintiff has failed to allege any facts or to present any evidence from which a reasonable trier of fact could conclude that the two-hour delay in going to the infirmary caused by Officer Love's failure to escort him the first time he asked to go to the infirmary caused him any harm or placed him in risk of harm, or that Officer Love was deliberately indifferent to his serious medical needs.   Accordingly, the court concludes that Officer Love is entitled to summary judgment on any claim that plaintiff is attempting to assert for delay of medical care because plaintiff's account of the facts does not support a claim for violation of a constitutionally protected right.   See Saucier v. Katz, 121 S.Ct. 2151, 2156 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

---

[16]Id. at pp. 3-5.

-14-

(ii)  Excessive Use of Force

To state an Eighth Amendment excessive force claim plaintiff must allege facts which if proven true would establish that he was injured by a use of physical force, that the physical force was more than de minimis, and that the physical force was not applied in a good-faith effort to maintain or restore discipline, but instead, maliciously and sadistically to cause harm.  Hudson v. McMillian, 112 S.Ct. 995, 999 (1992).  See also Eason v. Holt, 73 F.3d 600, 601-602 (5th Cir. 1996).  The Fifth Circuit has emphasized that "some physical injury is an indispensable element of an Eighth Amendment excessive force claim."  Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir. 1999).  To support an excessive force claim, "a prisoner must have suffered from the excessive force a more than de minimis physical injury, but there is no categorical requirement that the physical injury be significant, serious, or more than minor."  Id. at 924.  See also Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997).  Since plaintiff fails to present evidence showing that he suffered any injury when Officer Love pushed him against the wall and down to the floor to restrain him with handcuffs, the court concludes that Officer Love is entitled to summary judgment on any claim that plaintiff is attempting to assert against him for excessive use of force.  See Saucier, 121 S.Ct. at 2156 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

-15-

(b)  Major Kevin Wheat

Plaintiff alleges that Major Wheat saw Lieutenant Rodriguez assault him, but failed to intervene.  Prison officials may be liable under the Eighth Amendment for the failure to protect if they are deliberately indifferent to a substantial risk of serious harm.  Farmer, 114 S.Ct. at 1977.  The deliberate indifference standard "describes a state of mind more blameworthy than negligence."  Id. at 1978.  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Id.  The reason for focusing on the official's mental attitude is to isolate those defendants who inflict punishment.  Id. at 1980. Deliberate indifference may be inferred from the fact that the risk of harm is obvious.  Hope v. Pelzer, 122 S.Ct. 2508, 2514 (2002). Essential to plaintiff's failure to protect claim is evidence that defendant Wheat knew of a substantial risk of harm to the plaintiff.  Farmer, 114 S.Ct. at 1979.

Plaintiff's account of the events is that he saw Major Wheat and was attempting to talk to Major Wheat when Lieutenant Rodriguez hit him so hard that he fell to the floor.  Plaintiff also alleges that when Lieutenant Rodriguez called for leg cuffs that Major Wheat did not intervene.  Even if Major Wheat were present in the same area as plaintiff and Lieutenant Rodriguez when the assault

-16-

occurred, plaintiff has failed to offer any evidence to suggest that up until the moment of the alleged assault Lieutenant Rodriguez posed any risk of harm to plaintiff, or that Major Wheat was aware of that risk.  Plaintiff does not suggest, let alone demonstrate with evidence, that he and Lieutenant Rodriguez had any past animosity, that Lieutenant Rodriguez had ever threatened him, or that the intensity or duration of the alleged assault was so significant that Major Wheat should have been put on notice to take action.  On the contrary, plaintiff alleges that once the leg cuffs were put in place he was carried into the infirmary on a stretcher and treated.  Since plaintiff fails to present any evidence showing that Lieutenant Rodriguez posed a substantial risk of harm to plaintiff's health and safety, or that Major Wheat was aware of or ignored that risk, the court concludes that Major Wheat is entitled to summary judgment on any claim that plaintiff is attempting to assert against him for the failure to protect him from Lieutenant Rodriguez.  See Saucier, 121 S.Ct. at 2156 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

       (c)  Lieutenant Marc Rodriguez

Plaintiff alleges that Lieutenant Rodriguez used an excessive amount of force to prevent him from talking to Major Wheat in the hall outside the infirmary when he pushed him so hard that he fell

head first onto the floor causing a cut that required stitches.  To state an Eighth Amendment excessive force claim plaintiff must allege facts that, if proven true, would establish that he was injured by a use of physical force, that the physical force was more than de minimis, and that the physical force was not applied in a good-faith effort to maintain or restore discipline, but instead, maliciously and sadistically to cause harm.  Hudson, 112 S.Ct. at 999.  See also Eason, 73 F.3d at 601-602.

Although plaintiff alleges that the amount of force used by Lieutenant Rodriguez was greater than needed to prevent him from talking to Major Wheat because he was handcuffed, plaintiff does not allege that Rodriguez pushed him to the floor maliciously and sadistically to cause harm.  Moreover, plaintiff acknowledges that Lieutenant Rodriguez applied force to prevent plaintiff from approaching and/or talking to Major Wheat.  The gravamen of plaintiff's excessive force claim against Lieutenant Rodriguez is that Lieutenant Rodriguez negligently hit him harder than necessary to prevent him from approaching or talking to Major Wheat.  Since allegations of negligence will not support a claim for violation of constitutional rights, the court concludes that plaintiff's claim against Lieutenant Rodriguez for the excessive use of force is also subject to summary judgment.  See 42 U.S.C. § 1997e(c)(1) ("The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section

-18-

1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.").

## V.   Conclusions and Order

For the reasons explained above, the court concludes that the claims that plaintiff has asserted against all three defendants named in this action are subject to dismissal because plaintiff failed to exhaust his administrative remedies prior to filing suit. Alternatively, the court concludes that plaintiff's claims are subject to summary judgment because even if all plaintiff's allegations are established, he would not be able to show that any constitutional right would have been violated.   Accordingly, Defendants Love and Wheat's Motion for Summary Judgment (Docket Entry No. 31) is **GRANTED**.

The Clerk shall provide copies to the parties and to the Inmate Litigation Coordinator, Attorney General's Office, P.O. Box 12548, Austin, Texas 78711.

**SIGNED** at Houston, Texas, on this the 6th day of June, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-19-